**TRIUMPH TRUCKING, INC., Appellant,**

v.

**SOUTHERN CORPORATE INSUR-ANCE MANAGERS, INC. d/b/a Transportation Insurance Managers, Appellee.**

No. 01–05–00529–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 10, 2006.

Rehearing Overruled Oct. 18, 2006.

David Lee Augustus, Joseph John Hroch, Spencer & Associates, P.C., Houston, for Appellant.

Patricia J. Kerrigan, Werner & Kerrigan, LLP, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

Appellant, Triumph Trucking, Inc., appeals the take-nothing judgment rendered by the trial court after a jury found in favor of appellant. In two issues, Triumph contends that the trial court erred in disregarding the jury's verdict and in admitting evidence of the trial court's pretrial turnover of interpleaded funds to Triumph. We affirm.

## BACKGROUND

Appellant, Triumph Trucking, Inc. (Triumph), provided trucking services out of its Houston, Texas location. Appellee, Southern Corporate Insurance Managers, Inc., d/b/a Transportation Insurance Managers (TIM), is an independent insurance agency that was seeking commercial automobile liability insurance coverage for Triumph. Other defendants at trial, but not parties to this appeal, included Universal Insurance Exchange (UIE), a Dallas-based

insurance company, and Overland Insurance Company (Overland), which served as Managing General Agent for UIE and issued binders for coverage on UIE's behalf. Overland was owned by, and was effectively the same entity as, Thomas Gregory Corless.

Triumph's commercial automobile insurance carrier elected not to renew Triumph's insurance. TIM, as Triumph's insurance agent, secured a proposal for the coverage from UIE through Overland, which issued a binder for the insurance. Corless filed documents, as required by the Federal Motor Carrier Safety Administration (Safety Administration), showing that Triumph had the commercial automobile insurance required by the Safety Administration.

The total one-year premium for the insurance was $458,800. Triumph paid the required 25% down payment of $114,700 and the first monthly premium of $38,233 to TIM, which forwarded the payments, less its 10% commission, to UIE. Thereafter, Triumph paid six additional monthly premiums. However, because of a problem with UIE's automated billing system, TIM did not receive invoices after the initial payment and, as a result, did not forward those later payments to UIE.

In February 2002, questions arose regarding the status of Triumph's coverage. In April 2002, TIM learned that it had not forwarded Triumph's premium payments to UIE. However, TIM did not send the additional premium payments because of the coverage question and because a copy of the policy had never been received. During this same time period, UIE cancelled the insurance filings with the Safety Administration, and Triumph ceased its trucking operations. Also, during the period that Triumph was supposed to be covered by UIE, Triumph settled four claims totaling $41,527 and paid $12,115 in attorney's fees in connection with those claims.

TIM interpleaded $206,460 in state district court as disputed funds and named Triumph, UIE, Overland, and Guardian as defendants/claimants. Of the premiums paid by Triumph, TIM retained $38,234 as a commission. Triumph filed an application for turnover of the interpleaded funds, asserting that the funds were premiums paid by Triumph for insurance coverage that was never issued. The trial court granted the application and signed an order for turnover of the funds.

Triumph filed a counterclaim against TIM and crossclaims against UIE, Overland, and Guardian, alleging breach of contract, breach of fiduciary duty, violation of the insurance code and the deceptive trades practices act, and fraud. The case was tried to a jury. The jury questions and responses at issue in this appeal are Question Nos. 4, 14, and 16. Question No. 4 asked,

> Did TIM fail to comply with its agreement, if any, to obtain insurance coverage for Triumph?
>
> Answer "Yes" or "No"

The jury answered "Yes." Other questions regarding liability were Nos. 7, 8, 9, 11, 12, and 13. Question No. 7 asked whether any unfair or deceptive act or practice of TIM, UIM, or Corless caused damage to Triumph. Question No. 8 asked whether TIM or UIE engaged in any false, misleading, or deceptive act or practice that Triumph relied on to its detriment and that was a producing cause of damages to Triumph. Question No. 9 asked whether TIM, UIE, or Corless engaged in any unconscionable action or course of action that was a producing cause of damages to Triumph. Question No. 13 asked whether the negligence, if any, of TIM or Corless proximately caused damage to Triumph.

The jury answered "Yes" to each of these questions. Question No. 11 asked whether TIM complied with its fiduciary duty to Triumph. The jury answered "No." The jury also answered "No" to Question No. 12, which asked whether TIM or UIE committed fraud against Triumph.

Question No. 14 was predicated as follows:

> If you answered ... "Yes" to Question Nos. 7, 8, 9, 12, or 13 as to TIM, ... or "No" to Question No. 11, then answer the following question. Otherwise, do not answer the following question.

Question No. 14 then asked,

> For each party found by you to have caused the damages, if any, to Triumph, find the percentage of responsibility of those named below?

The jury found TIM 30%, UIE 10%, and Corless 60% responsible. Question No. 16 was predicated as follows:

> If you answered assigned [sic] a percentage to either TIM or UIE in Question No. 14, then answer the following question. Otherwise, do not answer the following question.

Question No. 16 then asked,

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Triumph for its damages, if any, that resulted from the transaction in question?

> Do not include in your answer any amount that you find Triumph could have avoided by the exercise of reasonable care.

> Do not include in your answer any amount for damages that were caused solely by Coreless [sic], if any.

> Answer in dollars and cents for damages, if any.

Answer: _____

The jury answered "$50,349.44."

Triumph filed a motion for entry of judgment on the verdict, requesting recovery on the jury's finding of breach of contract (Question No. 4), damages (Question No. 16), and attorney's fees as found by the jury (Question No. 20: $145,000 plus $17,500 for appeals). TIM filed a motion for judgment notwithstanding the verdict (JNOV), a motion to disregard certain jury findings, and an objection to any findings made pursuant to rule 279 of the Texas Rules of Civil Procedure. The trial court did not specifically rule on either of these motions, but signed a final judgment ordering that Triumph take nothing by its suit.

## DISCUSSION

### Take–Nothing Judgment

■ In its first issue, Triumph contends that the trial court erred in disregarding the jury's verdict and entering a take-nothing judgment on its claims. Triumph asserts, "The true issue on appeal is whether more than a scintilla of competent evidence supports" the jury's damages finding in Question No. 16, which included both causation and damages.

TIM responds that the court's charge to the jury did not include questions on causation or damages for breach of contract. TIM contends that there is no evidence in the record to support deemed findings on those omitted elements, arguing that Triumph was not damaged by TIM's failure to secure insurance coverage, but, rather, received a financial windfall by profiting from its continued trucking operation and recovering over $200,000 of the $382,335 it paid in premiums.

■ In a jury trial, the trial court submits disputed fact issues to the jury. *Lafarge Corp. v. Wolff,* 977 S.W.2d 181,

186 (Tex. App.-Austin 1998, pet. denied). When the evidence conclusively establishes an issue, the trial court need not submit that issue to the jury. *Transit Enterps., Inc. v. Addicks Tire & Auto Supply, Inc.,* 725 S.W.2d 459, 462 (Tex.App.-Houston [1st Dist.] 1987, no writ). Generally, a JNOV can be rendered only when there is no evidence to support one or more of the jury's findings that are necessary to liability. *See, e.g., Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003). When an independent ground of recovery is not submitted to the finder of fact, the plaintiff may prevail on that ground only if the issue has been conclusively established. Tex.R. Civ. P. 279; *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222–23 (Tex.1992).

Rule 279 of the Texas Rules of Civil Procedure provides, with respect to omitted elements of a ground of recovery:

> When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment.

Tex.R. Civ. P. 279.

Triumph made no objection to the submission of Question No. 16—the sole damages question in the charge, nor did Triumph object to the omission of a specific question regarding causation and damages relating to breach of contract. Question No. 16 was predicated on Question No. 14 (the proportionate-responsibility question) which, in turn, was predicated on Questions No. 7 (unfair or deceptive act or practice), No. 8 (false, misleading, or deceptive act or practice and producing cause), No. 9 (unconscionable action and producing cause), No. 11 (fiduciary duty), and No. 13 (negligence and proximate cause). Question No. 14 was not predicated on Question No. 4 (breach of contract); therefore the jury's answer in Question No. 16 is not a finding of damages resulting from TIM's breach of contract.

■ Triumph argues that Question No. 16 is an "all encompassing" damages question that also finds causation. Triumph further argues, in a footnote, that the predicate to the question does not exclude the breach-of-contract claim. Triumph asserts that the predicate "merely directs the jury to answer the damages question only if certain conditions are satisfied," citing *H.E. Butt Grocery Co. v. Bilotto,* 985 S.W.2d 22, 24 (Tex.1998). Triumph's statement is correct, but it is misapplied. Under the predicate to Question No. 16, the condition to be satisfied before answering the question is a finding of a percentage of liability in Question No. 14, which is predicated on liability findings in Question Nos. 7, 8, 9, 11, 12, or 13. Question No. 16 is not referable to Triumph's claim for breach of contract. Thus, there is no jury finding on causation or damages resulting from TIM's breach of contract.

■ Under rule 279, the parties are considered to have agreed to waive a jury trial on the unsubmitted elements and to have submitted those issues to the trial court for resolution. *First State Bank, Morton v. Chesshir,* 634 S.W.2d 742, 747 (Tex.App.-Amarillo 1982, writ ref'd n.r.e.). If the trial court does not make written

findings, the court of appeals will deem the omitted elements found in support of the judgment. *Gulf States Utilities Co. v. Low,* 79 S.W.3d 561, 565 (Tex.2002). However, when the trial court renders a JNOV, it demonstrates that no finding was made on the omitted element. *Washam v. Hughes,* 638 S.W.2d 646, 648–49 (Tex.App.-Austin 1982, writ ref'd n.r.e.). In such a case, the losing party may prevail on appeal only by showing that it established the omitted element conclusively. *Id.* at 649. Thus, the existence of more than a scintilla of evidence of some of the elements will not defeat the JNOV.

Because the trial court in this case rendered a JNOV and did not make written findings of fact, we must determine whether Triumph established, as a matter of law, that it suffered damages caused by TIM's breach of its agreement with Triumph.

Triumph does not argue that it conclusively established causation and damages relating to its breach-of-contract claim. Rather, it argues that "TIM's retention of commissions in the amount of $38,233.50" and the "attorney's fees of $12,115.04 in connection with" claims Triumph settled are more than a scintilla of evidence to support causation and damages for breach of contract.

TIM contends that Triumph did not suffer any damages, but instead, reaped a windfall because it was able to operate for seven months, earning gross receipts of approximately $1.5 million per month and a 10 to 12 % profit. In addition, TIM argues that Triumph received the $206,000 from the registry of the court, resulting in Triumph's payment of only $176,208 during a time period (seven months) when full premiums for its insurance would have been $267,458.

The issue of damages was vigorously contested in the trial court, and both Triumph and TIM produced evidence to support their contentions. Therefore, Triumph did not conclusively establish either causation or damages. Accordingly, we overrule Triumph's first issue.

**Evidence of received funds**

█ In its second issue, Triumph contends that the trial court erred in admitting evidence of the trial court's pretrial turnover of interpleaded funds to Triumph because, according to Triumph, the funds came within the collateral source rule. Triumph also argues that the admission of the evidence was a violation of rule 605 of the Texas Rules of Evidence, which prohibits a judge from testifying in a trial over which the judge is presiding. *See* Tex.R. Evid. 605. We review a trial court's evidentiary rulings for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998).

█ The collateral source rule generally prevents a tortfeasor from benefitting from payments made to a plaintiff by parties other than the tortfeasor. *Taylor v. Am. Fabritech, Inc.,* 132 S.W.3d 613, 626 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Under this rule, a defendant may not offer evidence of payment from a collateral source and may not take an offset for such payments. *Id.* The rule is an exception to the one-satisfaction rule. *See Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980) ("If payment is within the collateral source rule, the principle forbidding more than one recovery for the same loss is not applicable.").

█ Triumph argues that the court's ruling was a violation of the collateral source rule because the funds came from the court. Triumph states, "It cannot be disputed that the source of the funds delivered to Triumph was the trial court."

In fact, the source was not the trial court. TIM placed the funds in the registry of the court. Therefore, the source of the funds was TIM. The trial court merely returned those funds to Triumph. Furthermore, the trial court ruled that the evidence of the turnover was admissible to show that Triumph believed that it was not insured after contradictory testimony by Triumph regarding whether it believed that it was insured.

We hold that the collateral source rule did not apply to these funds.

With regard to rule 605, that rule provides, "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." TEX.R. EVID. 605. The Texas Court of Criminal Appeals has construed the rule to prohibit not only a judge's direct testimony, but also "the functional equivalent of witness testimony." *Hammond v. State*, 799 S.W.2d 741, 746 (Tex.Crim.App.1990).[1]

Triumph relies on *In re T.T.*, 39 S.W.3d 355 (Tex.App.-Houston [1st Dist.] 2001, no. pet.), to support its contention that the trial court violated this rule. In *T.T.*, a parental-rights-termination case, the trial court admitted into evidence a temporary order signed by the court in which the court made findings adverse to the defendants on issues very similar to those that the jury was to determine. *Id.* at 358. This Court stated, "The effect of admitting the judge's written statements in the order was the same as if the judge had violated Rule 605 by testifying to those statements." *Id.*

In this case, the documents to which Triumph objected were Triumph's application for turnover and an unsigned order prepared by Triumph for the judge's signature. We conclude that neither of these documents was the functional equivalent of testimony by the judge in violation of rule 605.

We hold that the trial court did not abuse its discretion in admitting evidence of the turnover of the impleaded funds to Triumph. Accordingly, we overrule Triumph's second issue.

## CONCLUSION

We affirm the trial court's judgment.

---

1. The Supreme Court has relied on the Court of Criminal Appeals' interpretation of Rule 605. *See, e.g., Bradley v. State ex rel. White,* 990 S.W.2d 245, 248 (Tex.1999) (citing *Hensarling v. State,* 829 S.W.2d 168, 170 (Tex. Crim.App.1992)).