ACCEPTED
13-15-00173-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/23/2015 3:07:10 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00173-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/23/2015 3:07:10 PM
CECILE FOY GSANGER
Clerk

---

## RICHARD LONGORIA

## VS.

## THE STATE OF TEXAS

---

On Appeal from the
156th District Court of
Bee County, Texas
Cause No. B-13-2143-0-CR-B

---

## BRIEF FOR APPELLANT

---

**Faith S. Johnson**
SBN: 18367550
*Attorney for Appellant*

5201 N. O'Connor Blvd., Suite 500
Irving, Texas 75039
972-401-3100
972-401-3105 (facsimile)
fjassociates@att.net

## LIST OF PARTIES

**Appellant**

Richard Longoria

**Attorneys for Appellant**

Faith S. Johnson
5201 N. O'Connor Blvd., Suite 500
Irving, Texas 75039
972-401-3100
972-401-3105 (facsimile)

John D. Nation
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
214-800-5160
214-800-5161 (fax)

**Appellee:**

The State of Texas

**Attorney for Appellee:**

Mr. Jose L. Aliseda, Jr.
District Attorney, Bee County
111 S. St. Mary, Suite 203
Beeville, Texas 78102

# TABLE OF CONTENTS

LIST OF PARTIES ................................................................................................2

LIST OF AUTHORITIES ......................................................................................5

STATEMENT OF THE CASE ...............................................................................9

ISSUES PRESENTED............................................................................................9

STATEMENT REGARDING ORAL ARGUMENT ............................................10

FACT STATEMENT............................................................................................10

SUMMARY OF THE ARGUMENT ...................................................................17

ARGUMENT .......................................................................................................19

Point of Error No. One:......................................................................................19

*The trial court erred in admitting State's Exhibit 34, a videotape of Appellant's interview with police.* ........................................................................................19

Point of Error No. Two: .....................................................................................24

*The trial court erred in failing to file findings of fact and conclusions of law.*........24

Point of Error No. Three: ...................................................................................25

*The trial court erred in admitting an extraneous bad act or offense that Appellant was "maxed out on drugs" on the date of the offense.*............................................25

Point of Error No. Four:.....................................................................................30

*The trial court erred in admitting State's Exhibit 28, a jail information record.* ...30

Point of Error No. Five: ......................................................................................34

*The trial court erred in commenting on the weight of State's Exhibits 28.*.............34

Point of Error No. Six: ..............................................................................40

*The evidence is insufficient to sustain conviction for possession of a firearm by a felon.* ..............................................................................40

Point of Error No. Seven: ..........................................................................43

*The trial court abused its discretion in admitting State's Exhibit 37, a jail booking information document, at the punishment hearing.* ................................43

CONCLUSION AND PRAYER FOR RELIEF ........................................45

CERTIFICATE OF WORD COUNT ......................................................46

CERTIFICATE OF SERVICE ...............................................................46

# LIST OF AUTHORITIES

**Cases**

*Adams v. State*, 20 S.W.2d 772 (Tex. Crim. App.1929)........................................34

*Barrow v. State*, 71 Tex. Cr. R. 549, 160 S.W. 458 (1913)....................................33

*Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011)........................26

*Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986);...............................39

*Bonner v. State*, 32 S.W. 1043 (Tex. Crim. App. 1895)........................................34

*Burrows v. State*, 128 Tex. Cr. R. 349, 81 S.W.2d 523 (1935). ...........................35

*Chambers v. State*, 700 S.W.2d 597 (Tex.Cr.App.1985). ......................................33

*Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010)...............................26

*Cole v. State*, 839 S.W.2d 798, 803 (Tex. Crim. App. 1990).................................30

*Colorado v. Connelly*, 479 U.S. 157, 168 (1986)...................................................18

*Fare v. Michael C.*, 442 U.S. 707, 725 (1979))......................................................19

*Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). ..........................38

*Flowers v. State*, 220 S.W.3d 919, 921-922 (Tex. Crim. App. 2007).....................41

*Flowers v. State,* 220 S.W.3d 919, 922-923 (Tex. Crim. App. 2007).....................30

*Garza v. State*, 915 S.W.2d 204, 211 (Tex. App.—Corpus Christi 1996, pet. ref'd). ......................................................................................................22

*Gibbs v. State*, 20 S.W. 919 (Tex. Crim. App.1892). ..............................34

*Henry v. State*, 149 Tex. Cr. R. 321, 194 S.W.2d 264 at 265 (1946). .....................33

*Hill v. State*, 429 S.W.2d 481, 486 (Tex.Crim.App.1968) ......................18

*Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)..............38

*In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003)........................................36

*Isassi v. State*, 330 S.W.3d 633, 639 (Tex. Crim. App. 2010) ................39

*Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) ..................19

*Littles v. State*, 726 S.W.2d 26, 30 (Tex. Crim. App. 1984)...................39

*Marta v. State*, 81 Tex. Cr. R. 135, 193 S.W. 323 (1916),.....................34

*Menefee v. State*, 928 S.W.2d 274, 278 (Tex. App.—Tyler 1996, no pet.) ............39

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ......................................18

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). ....................23

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). ........................................19

*North Carolina v. Butler*, 441 U.S. 369, 373 (1979)...............................18

*Patrick v. State*, 106 Tex. Cr. R. 205, 291 S.W. 901 (1927) ..................34

*Pollard v. State*, 255 S.W.3d 184, 189 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009). ................................................................24

*Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996) ........................30

*Snowden v. State*, 353 S.W.3d 815, 821-822 (Tex. Crim. App. 2011)....................21

*State v. Handsbur*, 816 S.W.2d 749, 750 (Tex. Crim. App. 1991) ........................30

*Taylor v. State*, 50 Tex. Cr. R. 560, 100 S.W. 393 (1907) ....................................33

*Tew v. State*, 551 S.W.2d 375 (Tex. Crim. App. 1977);..........................................34

*Tienda v. State*, 358 S.W.2d 633, 638-639 (Tex. Crim. App. 2012) ......................35

*Triumph Trucking Inc. v. Southern Corporate Managers, Inc.*, 226 S.W.3d 466, 472 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)....................................36

*Watson v. State*, 762 S.W.2d 591, 601 (Tex.Crim.App.1988). ..............................18

*Woods v. State*, 152 S.W.3d 105, 116-117 (Tex. Crim. App. 2004). ......................18

**Statutes**

Article 38.22.................................................................................................. 14, 20

TEX. CODE CRIM. PROC. art. 37.07, § 3...............................................................41

TEX. CODE CRIM. PROC. art. 38.22, § 3 (a) (2)....................................................18

TEX. CODE CRIM. PROC. art. 38.22, § 6.................................................................22

**Rules**

Rule 404 (b), .................................................................................... 23, 24

Rule 803 (8), ...........................................................................................29

Rule 901 (7) ............................................................................................30

Rule 902 (4) ............................................................................................31

TEX. R. APP. PRO. 44.2 (a)...................................................................20

Tex. R. Evid. 104 ...................................................................................35

Tex. R. Evid. 404 (b)..............................................................................23

Tex. R. Evid. 605 ...................................................................................36

Tex. R. Evid. 803 ...................................................................................29

Tex. R. Evid. 901 ...................................................................................30

Tex. R. Evid. 902 (4)..............................................................................30

Texas Rule of Appellate Procedure 44.2(b),.........................................25

**Treatises**

Black's Law Dictionary (4th Edition) ....................................................33

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellant Richard Longoria and submits this brief on appeal from the judgment in Cause no. B-13-2143-0-CR-B.

## STATEMENT OF THE CASE

Appellant Richard Longoria was charged in a two-count indictment with murder and possession of a firearm by a felon. Count 1 of the indictment alleged that on or about August 18, 2013, Appellant caused the death of Alex Longoria by shooting him with a firearm. Count 2 alleged that Appellant, having previously been convicted of the offense of robbery in Cause no. 11-CR-3180-G, in the 319th District Court of Nueces County, intentionally and knowingly possessed a firearm on or about August 18, 2013, before the fifth anniversary from Appellant's release from community supervision under that case. (R.I 4).

Having plead not guilty to this indictment, Appellant proceeded to jury trial. The jury found him guilty on both counts of the indictment. Punishment was assessed by the jury at life imprisonment on Count 1 and twenty years imprisonment in Count 2. (R.I 241-242). Appellant timely filed a motion for new trial and notice of appeal. (R.I 251, 252-253).

## ISSUES PRESENTED

1.      Did the trial court abuse its discretion in admitting State's Exhibit 34, Appellant's videotaped statement?

2.     Did the trial court err in failing to file findings of fact and conclusions of law concerning the admissibility of State's Exhibit 34?

3.     Did the trial court abuse its discretion in admitting testimony that Appellant was "maxed out on drugs" before the shooting?

4.     Did the trial court abuse its discretion in admitting State's Exhibit 28, a jail record of booking information?

5.     Did the trial court err in commenting on the weight of State's Exhibit 28?

6.     Was the evidence sufficient to prove Count Two of the indictment, that Appellant was a felon in possession of a firearm?

### STATEMENT REGARDING ORAL ARGUMENT

This case contains a number of fact-based issues. Appellant requests oral argument as he believes argument would benefit the panel in resolving these issues.

### FACT STATEMENT

Bobby Lara, a friend of the decedent, Alex Longoria, testified that on August 18, 2013, early in afternoon, he accompanied the decedent and Cordell Aguirre to Nopal Park in Beeville, where the decedent was to fight the Appellant, Richard Longoria.[1] The fight was over a woman, Malori Gonzales. (R.6 22). At Nopal Park

---

[1] Testimony indicated that the Appellant and decedent were not related.

they waited about 20-30 minutes for Appellant to show. During this time, the decedent paced back and forth in the park, praying. (R.6 23-24).

Appellant arrived, coming out on the passenger side of a Camaro Z-28, holding a .22 rifle. He fired a shot at the feet of the decedent. (R. 6 25). This shot landed at decedent's feet. (R.6 29). The decedent asked why Appellant had to have a gun. Appellant fired again, this time striking the decedent in the side. After limping toward his friends, decedent fell to the ground and then fled when the driver of the Camaro drove off. (R.6 25-29).

According to Lara, the decedent did not have a gun and neither did he or Cordell Aguirre. After the shooting, Cordell removed his shirt and pressed on the wound. (R.6 30).

The decedent apparently feared he would be shot. When they arrived at Nopal Park, decedent warned Lara and Aguirre to stay in the car in case he was shot. (R.6 33, 37).

Ralph Arismendez, a local constable, heard the dispatch about the shooting, and being nearby, became the first officer on the scene. He saw two men (apparently Lara and Aguirre) waving him down. (R. 6 73). The first thing they told him was the suspect's name. (R. 6 75). They also gave him a description of the car and the direction of travel. (R. 6 79). Arismendez put this information out on the radio. Police then arrived and took charge of the scene. (R. 6 81).

Lt. Kenneth Jefferson of the Beeville Police arrived at the scene and encountered Lara and Aguirre. They told him the identity of the shooter, Appellant, gave a description of the vehicle and the direction in which it had fled. (R.6 109). Jefferson went looking for Appellant at an address on 210 E. Rachel but did not find him there. Appellant was later taken into custody without incident on S. Emily Street. (R.6 11-113).

Dr. Ray Fernandez, a medical examiner for Nueces County, testified that the cause of the decedent's death was a gunshot wound to the abdomen. (R.6 144-146).

Art Gamez, an officer with the Beeville Police Department, found State's Exhibit 13, a rifle allegedly used in the offense. (R.6 162). No fingerprints or DNA were recovered from the rifle. (R.6 163). Gamez identified State's Exhibit 15 as a projectile recovered from the decedent's body. (R.6 164).

Gamez further testified that his investigation revealed that there were two calls placed to the decedent's phone, at 2:48 p.m. and 2:53 p.m., from a number associated with Appellant. (R.6 173-174).[2]

---

[2] Michael Constante, a store manager for ATT in Beeville, testified that a business record affidavit, State's Exhibit No. 4, showed that a prepaid sim card was purchased by Appellant on August 18, 2013. (R.6 103-104).

Angela Skoruppa, a forensic scientist with DPS, testified that she had examined both the rifle, State's Exhibit 13 and the projectile, State's Exhibit 15 and concluded that the rifle had fired the projectile. (R.6 220-223).[3]

Luis Sanchez owned a barbecue restaurant across from Nopal Park known as the Sugar Shack. Sanchez witnessed part of the events and called police. (R.7 11-13).

Justin Estrada testified that, sometime after 2:30 p.m. on August 18, 2013, he saw Appellant walking near Estrada's mother's house. Appellant, wearing shorts but no shirt, was with a Hispanic man whom Estrada did not know. (R. 7 53-56). Appellant said he was going to Estrada's mother's house to ask his little sister for a ride. Appellant told Estrada he "had gotten into something at the park." (R.7 56). Estrada told him he would give him a ride, which he did, dropping Appellant off at Appellant's cousin's house. (R. 57). Upon prompting by the State, Estrada recounted that Appellant told him that "he fucked up some dude at the park" and needed a ride real quick. (R.7 57).

Malori Gonzales testified that she dated the decedent about three years ago. She then began dating Appellant, with whom she had a child. (R.7 68). Malori

---

[3] Danny Caddell, a Live Oak County Sheriff's Department Investigator, attempted at trial to prove Appellant's prior conviction for robbery in order to prove felon status on the firearm charge. His testimony is recounted under the specific point of error.

testified that the decedent had never tried to break up her relationship with Appellant. (R.7 68-69).

On the morning of the offense, according to Gonzales, she awakened to find Appellant watching her and the child sleep at her house. She had not invited Appellant there—they had been broken up for a month or so—and she "freaked out." (R.7 69-70). That afternoon, before the offense, she called decedent and told him not to fight the Appellant because "he was maxed out on drugs." (R. 7 70). She testified that Appellant had always been jealous of the decedent. (R. 7 79).

Eddie Garcia, a Bee County Deputy Sheriff, interviewed witnesses at the scene. There Cordell Aguirre identified Appellant as the shooter. (R.7 108).

Andrew Clay Lopez testified that he knew Appellant for a few months before the offense. Lopez had felony convictions for DWI, evading arrest and drug possession and was in custody at the time of his testimony. (R.7 146).

On the day of the offense, before the shooting occurred, Lopez went to get food for his girlfriend, who was pregnant. When he returned, he discovered his girlfriend was having a miscarriage and had gone to the hospital. (R.7 149). Although Lopez wanted to go to the hospital directly, Appellant asked for a ride and Lopez complied. (R.7 151-152).

Appellant said he wanted to go to Nopal Park or Sugar Shack. During the ride, Lopez heard Appellant talking to another person on his phone, saying he was on his

way. (R.7 152). When they arrived, Appellant told the other person that "he didn't see him." (Id).

As Lopez was driving up, he saw the decedent come towards them. Appellant exited the car with a rifle that Lopez, mysteriously enough, had not previously seen. The decedent, according to Lopez, did not have a weapon. (R.7 153). Appellant brought the rifle up and fired twice. Lopez began to drive away. Appellant reentered the car, shouting, "stay on the ground, bitch." (R.7 154). As Lopez drove away, Appellant threw the rifle out the window. Reaching a stop sign, Lopez asked Appellant what his problem was. Appellant and Joe Rosas, his companion, got out and ran. (R.7 155).

Toby Floyd, Jr., a federal prisoner on a felon with a weapons charge, testified that he had been in jail with Appellant while he was awaiting trial. Appellant began to talk about his case, according to Floyd. Appellant related that he and the decedent had been arguing about a girl. On the date of the offense, Appellant arranged to meet with the decedent at the Sugar Shack, across from Nopal Park. He rode over to the park with another guy, and when he saw the decedent, got out and shot twice at the decedent, hitting him the second time. Appellant threw out the gun as he was driven away. (R.7 238-239).

According to Floyd, Appellant never said the decedent had a weapon or that the shooting was committed in self-defense. Appellant never expressed remorse for the shooting. (R.7 239-240).

State's Exhibit 34, a videotape interview with Appellant and police, was shown to the jury. (R.8 59).

Cordell Aguirre testified that he went with the decedent to Nopal Park, as did Bobby Lara, for moral support. They all thought there would be a fight with Appellant. (R.8 97). After about 30 minutes, Appellant appeared, almost immediately getting out of a vehicle and firing at the decedent. (Id). After the first shot missed, decedent asked Appellant why he had to bring a gun. (Id). Appellant reloaded and fired a second shot which struck the decedent. (R.8 97-99).

Aguirre covered the wound with his shirt. He testified that neither he, Lara nor the decedent had a weapon. (R.8 100). They were expecting a guy named Richard, but Aguirre did not know Appellant personally. (R.8 103-104).

In the defense case, Art Gamez testified concerning another weapon, a pistol, that had been found at the scene. Gamez did not have it tested for fingerprints; because the gun was found with grass intertwined, he concluded that the pistol had been there for some time and was not involved in the offense. (R.8 157).

## SUMMARY OF THE ARGUMENT

1.     Police officers administered the Miranda and Article 38.22 warnings before questioning Appellant for an oral statement. They did not, however, obtain a waiver of Appellant's right against self-incrimination. To the contrary, the record reveals that Appellant told the officers under what circumstances he would and would not talk to them. Ignoring these directives, officers began to question Appellant about the offense. Mere compliance with an officer's question does not constitute a waiver of self-incrimination and the trial court abused its discretion in admitting the statement.

2.     The trial court was required to file findings of fact and conclusions of law regarding the voluntariness of Appellant's statement. Because the court did not do so, the case must be abated so that the court may prepare and file findings.

3.     Appellant's ex-girlfriend testified that, before the shooting, he was "maxed out" on drugs. This constituted evidence of an extraneous offense that was not relevant to any contested issue in this case. Admission of this evidence was harmful as it injected a new and inflammatory offense into evidence.

4.     State's Exhibit 28 was a booking information record from another county. The State offered it as a self-authenticating document without attestation, affidavit or certification. Such is not permitted under the rules of evidence. Because

this evidence was the linchpin of the State's proof that Appellant was a felon in possession of a firearm, admission of this evidence was harmful.

5.    In admitting State's Exhibit 28, the trial court made remarks that essentially conveyed the trial court's opinion to the jury that the document was authentic, credible and what it purported to be. Of course, a trial court may not comment on the credibility of any evidence, and this comment was harmful as it certainly affected the jury's deliberations on the issue of the proof of the prior conviction.

6.    The State failed to prove Appellant's link to the prior conviction. There were no fingerprints on the original judgment from the prior felony. Appellant's fingerprints matched a document from a probation revocation on the underlying case, but not with anything from the original case itself.

7.    In the punishment hearing, the court admitted States Exhibit 37, which was numbered 28 in the guilt-innocence phase of trial. This document was no more admissible during punishment and the court reversibly erred in its admission.

## ARGUMENT

Point of Error No. One:

*The trial court erred in admitting State's Exhibit 34, a videotape of Appellant's interview with police.*

The State sought admission of State's Exhibit 34, a videotape of an interview with Appellant and police officers. Before the exhibit was admitted and played for the jury, the parties engaged in a colloquy with the court concerning admissibility.

In support of admission, the State argued that, after being warned, Appellant did not invoke his right to counsel, but continued to speak with officers, which, according to the State, constituted an implicit waiver of his rights. (R.8 52-53).

Defense counsel responded that there was no Miranda warnings card and no written waiver of Appellant's rights. Appellant had said he might be willing to speak with officers, but he did not want to talk to them and then have to go to jail. He did not want to have a motion to revoke pop up on his robbery case and then be stuck in jail with no bond. He also stated that he would cooperate in taking a polygraph test. But then Detective Gamez said, before we get to that….and then began questioning Appellant. Thus, according to counsel, Appellant did not waive his right to self-incrimination. (R.8 53-54). The trial court overruled Appellant's objections and admitted the exhibit. (R.8 55).

No recorded oral statement of an accused may be admitted unless, prior to the statement, but during the recording thereof, the accused knowingly, intelligently and voluntarily waives any rights set out in the warning. TEX. CODE CRIM. PROC. art. 38.22, § 3 (a) (2). Strict compliance with all portions of Section 3 (a) is required. *Woods v. State*, 152 S.W.3d 105, 116-117 (Tex. Crim. App. 2004).

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Hill v. State*, 429 S.W.2d 481, 486 (Tex.Crim.App.1968). The State must prove waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Neither a written nor an oral express waiver is required. *Watson v. State*, 762 S.W.2d 591, 601 (Tex.Crim.App.1988). A valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. *Miranda*, 384 U.S. at 475. But a waiver need not assume a particular form and, in some cases, a "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

The question is not whether Appellant "explicitly" waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily. *Id*. To evaluate whether Appellant knowingly, intelligently, and voluntarily waived his Miranda

rights the court turns to the standard outlined in *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Id.* (*quoting Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Fare,* 442 U.S. at 725; *see also Butler*, 441 U.S. at 375-76. *See also Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) for all the above propositions.

In this case, Appellant began by stating under what circumstances he would and would not cooperate and continued so to state. This statement was critical because only Appellant could invoke or waive his rights. Of course, the officer did not see fit to honor Appellant's request, stating "before we get to that," and then beginning questioning. As defense counsel correctly noted at trial, there was no

written waiver of Appellant's rights under *Miranda* or Article 38.22. There is no express oral waiver of Appellant's right against self-incrimination.

The State suggested that Appellant had waived his rights because he did not specifically invoke his rights and then continued to speak with the officers. But waiver may not be presumed from silence, nor may it be presumed simply because a confession was eventually obtained. *Miranda*, 384 U.S. at 475. The State had the burden to prove an intelligent, knowing and voluntary waiver to a preponderance of the evidence. Appellant's lack of a specific invocation and silence in the face of additional questioning does not constitute a knowing, intelligent and voluntary waiver of his right against self-incrimination and the trial court erred in admitting the statement.

Because this error concerns waiver of Fifth Amendment rights, such error is constitutional. If the appellate record reveals constitutional error that is subject to a harmless error analysis, the court of appeals must reverse a judgment of conviction unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. PRO. 44.2 (a).

An analysis of whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether, beyond a reasonable doubt, that particular error

did not contribute to the conviction or punishment. *Snowden v. State*, 353 S.W.3d 815, 821-822 (Tex. Crim. App. 2011).

Appellant's statement was not trivial or cumulative or the State would not have bothered with it. The statement was critical to the State because it was Appellant's account of the incident "from his own eyes." The record fails to disclose anything that would trivialize the statement to the point that its admission could have made no contribution to the conviction or punishment. The error was harmful and reversal is required.

Point of Error No. Two:

*The trial court erred in failing to file findings of fact and conclusions of law.*

In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to be voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. TEX. CODE CRIM. PROC. art. 38.22, § 6.

No findings appear to have been made, either written or oral. The making and filing of findings concerning the voluntariness of a confession are mandatory, and if findings are not made, an appeal will be abated for the trial court to do its mandatory duty. *Garza v. State*, 915 S.W.2d 204, 211 (Tex. App.—Corpus Christi 1996, pet. ref'd).

Accordingly, if the Court does not reverse on Point of Error No. One, the Court should abate for preparation and filing of the required findings.

Point of Error No. Three:

*The trial court erred in admitting an extraneous bad act or offense that Appellant was "maxed out on drugs" on the date of the offense.*

As noted previously, Malori Gonzales testified that she told the decedent not to fight the Appellant because he was "maxed out on drugs." (R. 7 70). Appellant objected to the extraneous offense. Although the trial court cautioned the prosecutor "going forward," the court overruled Appellant's objection.

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex. R. Evid. 404 (b). Whether objected-to evidence of "other crimes, wrongs or acts" has relevance apart from character conformity, as required by Rule 404 (b), is a question for the trial court. The trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

That Appellant was "maxed out on drugs" has no relevance in this case apart from character conformity. It did not make any fact of consequence to this case any more or less probable. Extraneous offenses are thought to be relevant on such issues as identity, intent, motive, plan or absence of mistake or accident. This evidence had no relevance to any of these issues. Identity was not at issue in this case. Intent was

inferred from Appellant's actions. Nothing in the facts of this case shows that Appellant's drug use would be relevant to motive. Drug use would not be relevant either to plan or absence of mistake or accident.

The prosecutor argued that this was "same transaction" evidence. Same transaction evidence means where several crimes are intermixed or connected and testimony regarding one crime cannot be given without showing the other crimes, or it would be impractical to do so, the evidence may be deemed admissible as "same transaction" contextual evidence. On the other hand, character evidence offered simply because it is background evidence offered to help the jury understand the offense, but which otherwise conflicts with Rule 404 (b), is not admissible. *Pollard v. State*, 255 S.W.3d 184, 189 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009).

It was certainly possible to prove one crime without the other—that is exactly what the prosecutor was doing before being derailed by the witness. It was unknown when Appellant became intoxicated by drugs, and this witness did not say when he became so intoxicated. Therefore, it is highly unlikely that the two crimes were so intertwined as to be inseparable.

The prosecutor also argued that the evidence was relevant to state of mind, whether Appellant was cool, calm and collected and whether he was making good decisions. With all due respect, making good decisions is not a legal issue. Sudden

passion arising from adequate cause was not an issue; therefore whether Appellant was cool, calm and collected was not at issue. There simply was no issue, apart from character-conformity, on which this evidence would have been relevant and the trial court abused its discretion in admitting this evidence.

On appellate review, and pursuant to Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error must be disregarded unless it affects the defendant's substantial rights. The appellate court will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly. In considering the potential to harm, the focus is not on whether the outcome of the trial was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of the trial was free from the substantial effect of the error. "Grave doubt" means that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error. In cases of grave doubt as to harmlessness the petitioner must win.

In assessing the likelihood that the jury's decision was improperly influenced, the appellate court must consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence

supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instruction given by the trial judge, the state's theory, defensive theories, closing arguments, voir dire, and whether the state emphasized the error. *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. But if the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, such non-constitutional error is harmless. In making a harm analysis, the court considers the entire record and calculates, as much as possible, the probable impact of the error upon the rest of the evidence. Overwhelming evidence is considered, regarding the issue to which the erroneously-admitted evidence was directed, but that is only one factor in the harm analysis. It is the responsibility of the appellate court to assess harm after review of the record and the burden to demonstrate harm does not rest on either the appellant or the State. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

Two factors should be considered immediately in the harm analysis. First, the evidence had almost zero relevance to any fact or issue of consequence in this trial. The prosecutor acknowledged as much, as he did not intend to bring out this evidence and was surprised by the witness. Further, the trial court, by overruling the

objection, placed his stamp of approval on this evidence, and the ameliorating effect of an instruction to disregard is not present. As far as the jury was concerned, that Appellant voluntarily intoxicated himself on illegal drugs was proper evidence of guilt.

The inflammatory effect of this evidence was sufficient to produce a substantial, rather than a slight effect on the jury's deliberations. As such, the error is harmful and requires reversal.

Point of Error No. Four:

*The trial court erred in admitting State's Exhibit 28, a jail information record.*

In order to prove Count Two of the indictment, possession of a firearm by a felon, the State was obliged to prove Appellant's alleged felony conviction in Cause no. 11-CR-3180-G, in the 319th District Court of Nueces County. To this end, the State offered State's Exhibit 26, a fingerprint card containing Appellant's recently-taken fingerprints, State's Exhibit 27, the judgment in the prior case (which did not contain any fingerprints) and State's Exhibit 28, a jail information document from Nueces County that did contain fingerprints.

The State sought admission of Exhibit 28 through Dan Caddell, a Live Oak County Sheriff's Department Investigator. When it became clear there would be objections to State's Exhibit 28, Caddell's testimony was deferred to later in the trial. When Caddell returned, Appellant objected that the exhibit was not based on the actual judgment, but on a motion to revoke probation. Appellant further objected that the exhibit was not a public document, was not self-proving and did not have either affidavit or sponsoring testimony from the appropriate records custodian. (R.8 11). The prosecutor responded that the document was self-authenticating. (R.8 12). The trial court overruled the objections. (R.8 12).

When Caddell testified before the jury, Appellant renewed his objections. On voir dire examination, Caddell testified that he had received State's Exhibit 28 from

a records custodian of Nueces County and that he was not the records custodian for that entity. (R.8 17-18). The trial court again overruled Appellant's objections to this exhibit. (R.8 20). Caddell testified that the fingerprints in exhibits 26 and 28 matched (R.8 16), therefore, in his opinion, Appellant was the same person as listed in State's Exhibit 27, the robbery judgment out of Nueces County. (R.8 20). State's Exhibit 28 was later redacted, but this redaction does not affect the objections as to its admissibility. (R.9 39).

Does a jail record have the same status as a court record, such as a judgment, so as to be self-authenticating? The answer would appear to be no. In this regard, Tex. R. Evid. 803 is instructive. Rule 803 (8), "Public Records and Reports," provides that records, reports, statements or data compilations, in any form, of public offices or agencies setting forth (a) the activities of the office or agency, (b) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers or other law enforcement personnel; or (c) in civil cases as to any party and in criminal cases against the state, factual findings resulting from an investigation made pursuant to authority granted under law, unless the sources of information or other circumstances indicate lack of trustworthiness. In other words, under certain circumstances, police records can escape the hearsay prohibition as being, in effect,

business records. *See, e.g., Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996); *Cole v. State*, 839 S.W.2d 798, 803 (Tex. Crim. App. 1990).

Tex. R. Evid. 901 states that public records or reports are not self-authenticating. Authentication of such records, according to Rule 901 (7) requires evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, statement or data compilation, in any form, is from a public office where items of this nature are kept. If evidence of the public nature of the document is required, a public record or report is not self-authenticating, without some sort of certification.

Under Tex. R. Evid. 902 (4), a copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2) or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority. *See Flowers v. State,* 220 S.W.3d 919, 922-923 (Tex. Crim. App. 2007) (computer-generated compilation of information setting forth the specifics of a criminal conviction that is certified as correct by the county or district clerk of the court in which the conviction was obtained is admissible under Rule 902); *State v. Handsbur*, 816 S.W.2d 749, 750 (Tex. Crim. App. 1991) (a proper certification by the custodian of the records

of a state correctional institution is sufficient authentication under both Rules 910 and 902 (4) for admission of a copy of a prior conviction contained in that institution's files).

Therefore, the Nueces County Jail record, without some form of certification, attestation or affidavit under Rule 902 (4) was inadmissible and the trial court abused its discretion in admitting the exhibit.

There can be no serious argument as to harm. State's Exhibit 28 was the linchpin of the State's proof of Count Two of the indictment and Appellant's status as a convicted felon. Obviously, the erroneous admission of this exhibit had a substantial and injurious effect on the jury's deliberations as to Count Two as the jury could not have convicted Appellant without the exhibit. Moreover, it certainly cannot be said that the erroneous admission of evidence of a prior felony conviction would not have a substantial and injurious effect on the jury's deliberations as to Count One, which did not necessarily depend on proof of the prior conviction. Moreover, as will be seen in the next point of error, the trial court compounded the error by commenting on the weight of this evidence. Because the erroneous admission of this evidence was harmful on both counts of the indictment, the cause must be reversed and remanded for a new trial.

Point of Error No. Five:

*The trial court erred in commenting on the weight of State's Exhibits 28.*

After admitting State's Exhibit 28, the trial court informed the jury:

"All right. I'm making a finding for the record that the State's Exhibit No. 28 does bear the original signature of Jacqueline Luckey, the purported custodian of the records for the Nueces County Sheriff's Office, and also bears the seal of that office.

I'm also finding for the record that the State's Exhibit 27, the judgment in this case is a judgment from April 23, 2012; that the fingerprint cards, there are two of them in State's Exhibit 28, one of the fingerprint cards is from a booking dated— purported to be dated February 2ⁿᵈ, 2012, before the date of judgment, and one is from—purports to be December 7, 2012, after the date of judgment.

I just wanted that to be in the record since sometimes photocopies, as the witness just testified to, don't necessarily show everything.

Defense counsel: Your honor, just for the record and also in front of the jury, we're going to object to the Court making a comment on the evidence. That's for the jury to determine whether or not all of that information that you've just noted—

The Court: That's why I'm saying these are purported. I didn't know what the dates were. That didn't get brought out by either side. I thought I would—

Defense counsel: So we want to make an objection to the Court making a comment.

The Court: Thank you. All three were admitted. Any follow up?"

(R.8 30-31).

It is axiomatic that it is improper for a trial court to single out certain testimony and comment on it. *Chambers v. State*, 700 S.W.2d 597 (Tex.Cr.App.1985). The charge should state the "law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence, or the credibility of the statements made by the party accused or by the witnesses." *Henry v. State*, 149 Tex. Cr. R. 321, 194 S.W.2d 264 at 265 (1946). Certainly, it is proper for a court to instruct the jury that the credibility of witnesses and the weight to be given their testimony are questions within their exclusive province. *Barrow v. State*, 71 Tex. Cr. R. 549, 160 S.W. 458 (1913). But how far can a court go? Where is the line of demarcation between a proper instruction and an improper instruction in this area? The key to the entire question is the definition of "a comment on the weight of the evidence." Black's Law Dictionary (4th Edition) defines a comment upon the evidence as meaning that a "trial judge is prohibited from conveying to [the] jury [the] trial judge's personal opinion as to the truth or falsity of any evidence...." (material in brackets added).

It has long been held that it is reversible error for the trial court to give instructions that refer to the credibility of the witnesses. For example, in *Taylor v. State*, 50 Tex. Cr. R. 560, 100 S.W. 393 (1907), this Court reversed Taylor's

conviction because the judge charged the jury that the fact of Taylor's prior conviction could not be considered for any other purpose than affecting his credibility as a witness. The Court noted that a correct charge would have instructed the jury that since the prior conviction was admitted for the purpose of showing Taylor's credibility as a witness, they could consider it for that purpose if they thought it did affect his credibility. *See also Patrick v. State*, 106 Tex. Cr. R. 205, 291 S.W. 901 (1927). *Cf. Adams v. State*, 20 S.W.2d 772 (Tex. Crim. App.1929).

Certainly a comment on the weight of the evidence occurs when the judge appraises the credibility of a particular witness. Thus when a judge, in his charge to the jury, suggests that certain evidence is true or is untrue, that is a comment on the weight of the evidence. *Tew v. State*, 551 S.W.2d 375 (Tex. Crim. App. 1977); *Bonner v. State*, 32 S.W. 1043 (Tex. Crim. App. 1895); *Gibbs v. State*, 20 S.W. 919 (Tex. Crim. App.1892).

Likewise an instruction which instructs a jury on the weight to be given certain testimony is error. In *Marta v. State*, 81 Tex. Cr. R. 135, 193 S.W. 323 (1916), the defendant asked that the jury be instructed that in determining the credibility of one of the State's key witnesses, they could consider the fact that he had made statements to Marta's attorneys which were at variance with his trial testimony. The trial court refused to so instruct the jury and that decision was upheld on appeal. The court of criminal appeals held that such an instruction would have been an impermissible

comment on the weight to be given certain testimony. The Court wrote that rather than being the subject of a jury charge, the objective of which is to set out the law applicable to the case, it was more properly a matter for jury argument. See also *Burrows v. State*, 128 Tex. Cr. R. 349, 81 S.W.2d 523 (1935).

The above cases concern the written jury charge but the analysis is no less applicable to an oral instruction by the trial court.

The trial court is the gatekeeper for evidence under Tex. R. Evid. 104. The ultimate question of authenticity—whether an item of evidence is what the proponent claims—is a question for the jury in a jury trial. Indeed, the trial court need not be persuaded that the proffered evidence is authentic. *Tienda v. State*, 358 S.W.2d 633, 638-639 (Tex. Crim. App. 2012). Determining whether the evidence is credible, and what weight, if any, to be given to the testimony is solely a jury issue.

The trial court definitely crossed the line herein. The court commented on the authenticity of State's Exhibit 28, that it bore the signature of the custodian of the records and the seal of office. No reasonable juror could have taken this comment to mean anything other than this exhibit was credible and was what it purported to be. The court also commented on the fingerprint cards and the dates thereon; this would convey to the jury that the cards were authentic and credible because they bore a temporal relationship with State's Exhibit 27, the judgment. That the trial court used

the word "purported" did not take its comments out of the realm of impermissible comment.

Moreover, in this the judge was acting as a witness. A judge may not testify at a trial over which he is presiding as a witness, and no objection is necessary to preserve the point. Tex. R. Evid. 605. The rule prohibits not only a judge's direct testimony, but also the functional equivalent of witness testimony. *Triumph Trucking Inc. v. Southern Corporate Managers, Inc.*, 226 S.W.3d 466, 472 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). *See also, In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003) (orders submitted into evidence, containing findings based on pretrial evidence by the very judge presiding over the termination proceeding, could be, like a judicial comment on the weight of the evidence, a form of judicial influence no less proscribed than judicial testimony. The jury was permitted to see findings of fact made by the very judge presiding over the trial, and those facts were the very ones that the jury itself was being asked to find. The fact-finding present in the orders admitted as evidence comes far too close to indicating the opinion of the trial judge as to the verity or accuracy of the facts in inquiry; held error but harmless based on other testimony in the record).

The court in this case was in effect indicating his opinion as to the authenticity and credibility of the exhibit. This was what the jury was being expected to determine of the exhibit. Hearing that the trial court believed the exhibit to be

authentic and credible was error, not only under the general prohibition against comment on the weight of evidence, but also under Rule 605.

This error was harmful under Rule 44.2 (b). It is difficult to imagine a more substantial effect on the jury's deliberations than in effect telling the jury what evidence is authentic. This is bound to convince a jury to give great weight to the evidence and ultimately decide the issue of the prior conviction in favor of the State, which the jury in fact did. The trial court virtually took a significant issue out of the jury's hands and it cannot be said under these circumstances that the error was harmless.

Point of Error No. Six:

*The evidence is insufficient to sustain conviction for possession of a firearm by a felon.*

Count Two of the indictment, alleging that Appellant committed the offense of possession of a firearm by a felon, as noted previously, necessitated proof of the prior felony.

The State is required to prove beyond a reasonable doubt that: (1) a prior conviction exists; and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). However, "[n]o specific document or mode of proof is required to prove these two elements." *Id*. "While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means" to prove the fact of the prior conviction, "the State may prove both of these elements in a number of ways, including . . . documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Id*. at 921-22. "Any type of evidence, documentary or testimonial, might suffice." *Id.* at 922.

In general, "the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Id*. at 923 (quoting *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)). "The pieces standing alone usually

have little meaning." *Id*. "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id*. The trier of fact is required to fit the pieces of the jigsaw puzzle together and weigh the credibility of each piece. *Id*. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id*. If the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, "then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id*. Since this is a legal sufficiency review, the court considers all the evidence in the light most favorable to the trier of fact's finding. *Isassi v. State*, 330 S.W.3d 633, 639 (Tex. Crim. App. 2010); *Littles v. State*, 726 S.W.2d 26, 30 (Tex. Crim. App. 1984).

A certified copy of the judgment standing alone is insufficient to prove a prior conviction, and this is true even if the name on the judgment is the same as the defendant in trial. *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986); *Menefee v. State*, 928 S.W.2d 274, 278 (Tex. App.—Tyler 1996, no pet.)

The evidence was legally insufficient to prove the prior conviction and Appellant's link to it, even under a generous standard of review. There was no fingerprint on the judgment of the underlying conviction and the jail booking

information concerned a probation revocation, not the original conviction. This did not provide a direct link between Appellant and the necessary prior conviction. Because the evidence was insufficient to prove the prior conviction, the evidence is insufficient to prove Count Two of the indictment, and the cause must be reversed and remanded with instructions to enter a judgment of acquittal.

Point of Error No. Seven:

*The trial court abused its discretion in admitting State's Exhibit 37, a jail booking information document, at the punishment hearing.*

In the punishment hearing, the State again sought to admit the booking information document from Nueces County. This time, the exhibit was denominated State's Exhibit No. 37. The court overruled Appellant's objections to this exhibit, which were the same objections levelled earlier when the exhibit was offered during guilt-innocence. (R.9 104).

To show the error in admitting this document, Appellant relies on the arguments and authorities set forth in Point of Error No. Four.

One more issue needs to be considered. Under TEX. CODE CRIM. PROC. art. 37.07, § 3, the trial court has the discretion to admit any evidence it deems relevant, including "the prior criminal record of the defendant." This might be considered an alternative avenue of admissibility of proof of a prior conviction, and perhaps one with a lesser standard of proof. Nevertheless, such is not at issue in this case because the State did not seek to admit the evidence under art. 37.07, § 3 as an alternative theory of admissibility. Also, it is doubtful that the State could have successfully sought admission, or proved the prior conviction under the "discretion" standard of Section 3. *See Flowers v. State*, 220 S.W.3d 919, 921-922 (Tex. Crim. App. 2007) (in punishment phase of trial, state must prove beyond a reasonable

doubt that (a) a prior conviction exists and (b) the defendant is linked to that conviction).

Harm is also evident under Rule 44.2 (b). Appellant received the maximum sentence possible under the murder charge. Admission of the prior conviction, which was accomplished through Exhibit 37, of course, made out Appellant as a prior offender, who would be deserving of a more severe punishment in the jury's eyes. The error was not harmless and reversal and remand for a new punishment hearing is required.

## CONCLUSION AND PRAYER FOR RELIEF

Appellant prays that the judgment below be reversed and remanded for further proceedings consistent with the Court's opinion.

Respectfully submitted,


/s/ Faith S. Johnson
Faith S. Johnson
State Bar No. 18367550
5201 N. O'Connor Blvd., Suite 500
Irving, Texas 75039
972-401-3100
972-401-3105 (fax)
fjassociates@att.net


John D. Nation
State Bar No. 14819700
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
214-800-5160
214-800-5161 (facsimile)
nationlawfirm@gmail.com

Attorney for Appellant

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief contains 8,917 words in Times New Roman 14-point font.

/s/ Faith S. Johnson
Faith S. Johnson


## CERTIFICATE OF SERVICE

I hereby certify that I have served a true copy of this brief on Mr. Jose Aliseda, District Attorney, Bee County, via the electronic filing system, on this 23rd day of July 2015.

/s/ Faith S. Johnson
Faith S. Johnson